# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Virginia M. Kendall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 3018 | **DATE** | 7/21/2011 |
| **CASE TITLE** | Hoskin vs. Premier Security | | |

**DOCKET ENTRY TEXT**

For these reasons, the Court grants in part and denies in part Premier Security's Motion to Dismiss. Counts I, II, and IV remain but the Court dismisses Count III.

■[ For further details see text below.]   Docketing to mail notices.

## STATEMENT

Plaintiff Daniel H. Hoskins ("Hoskins") brought suit against his former employer, Premier Security Corporation ("Premier Security"), alleging numerous claims surrounding his termination. He asserts Title VII race discrimination (Count I); breach of contract because Premier Security fired him without complying with a four-step disciplinary process outlined in the employee handbook (Count II); breach of contract because Premier Security failed to pay him $11.60 an hour as the Collective Bargaining Agreement ("CBA") required (Count III); and breach of contract for Premier Security's failure to give him the full amount of back pay owed (Count IV). Premier Security moves to strike allegations in Count I asserting age discrimination and violations of the Rehabilitation Act and 42 U.S.C. § 1983 because Hoskins did not raise them in his EEOC charge. In his response brief Hoskins conceded that he is seeking only Title VII relief under Count I, not these other three grounds, so the Court grants Premier Security's Motion to Strike those allegations by agreement. Also, because they are not available under Title VII, the Court strikes the reference in Count I to "liquidated/double damages." Moreover, Premier Security moves to dismiss in its entirety Counts II, III, and IV for two separate reasons: (1) the National Labor Relations Act, 29 U.S.C. § 151 *et seq.*, preempts these claims; and (2) the decision by the National Labor Relations Board ("NLRB") to dismiss Hoskins's charge and not file a complaint bars relitigation under *res judicata* and collateral estoppel. For the following reasons, the Court grants in part and denies in part Premier Security's Motion to Dismiss.

I.  **Preemption**

Premier Security argues that Counts II, III, and IV rely on activity protected by §7 or prohibited by §8 of the NLRA and as such exclusive primary jurisdiction rests with the NLRB, not this Court. *See Baker v. IBP, Inc.*, 357 F.3d 685, 688 (7th Cir. 2004). "When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." *San Diego Bldg. Trades Council, Millmen's*

*Union, Local 2020 v. Garmon*, 359 U.S. 236, 245 (1959); *U.S. v. Palumbo Bros., Inc.*, 145 F.3d 850, 861 (7th Cir. 1998). "When, however, the activity in question also constitutes a breach a collective-bargaining agreement, the Board's authority 'is not exclusive and does not destroy the jurisdiction of the courts in suits under [Labor Management Relations Act] s 301.'" *William E. Arnold Co. v. Carpenters Dist. Council of Jacksonville and Victinity*, 417 U.S. 12, 15-16 (1974) (quoting *Smith v. Evening News Ass'n*, 371 U.S. 195, 197 (1962)). The LMRA § 301 exception to *Garmon* exists because Congress sought to leave enforcement of CBAs "to the usual processes of law." *William E. Arnold Co.*, 417 U.S. at 16.

In general, NLRA § 7 involves the right of employees to join labor organizations and collectively bargain, and NLRA § 8 prohibits the employer and labor union from employing unfair labor practices. *See* 29 U.S.C. §§ 157, 158. While claims that implicate § 7 or § 8 of the NLRA are within the exclusive jurisdiction of the NLRB, Premier Security does not identify a specific NLRA provision in either section that even "arguably" applies here. Rather, Premier Security and Hoskins argue preemption in light of § 301, which "displaces any independent federal or state cause of action when the claim concerns a legitimate labor dispute and involves the breach of a collective bargaining agreement." *Palumbo*, 145 F.3d at 864. A state claim is independent of a CBA for § 301 preemption purposes "as long as the state-law claim can be resolved without interpreting the agreement itself." *Lingle v. Norgle Div. of Magic Chef, Inc.*, 486 U.S. 399, 410 (1988).

Hoskins alleges in Count II that Premier Security terminated him without resorting to the four-step disciplinary procedure set forth in the employee handbook. Premier Security maintains that Article III of the CBA controls the terms and conditions of employment and therefore the Court must interpret these provisions to evaluate Hoskins's claim. The CBA, however, only generally mentions that "discipline and discharge for cause shall be vested solely in the Employer," and it then lists examples of conduct constituting "just cause." As pled, Hoskins alleges breach of contract because Premier Security fired him without abiding by the four-step procedure in the employee handbook, not the CBA. Interpretation or analysis of the CBA is therefore not helpful to evaluating Count II. *See Livadas v. Bradshaw*, 512 U.S. 107, 123-24 (1994) (no preemption if "legal character" of claim is "independent" from rights under the CBA). Similarly, Count IV alleges that Hoskins filed a grievance against Premier Security in October 2008 after being terminated. Premier Security agreed as a result of the grievance process to reinstate Hoskins with full back pay, seniority, and benefits. Hoskins alleges breach of contract against Premier Security for failing to give him the full amount of back pay owed. Again, this breach of contract claim hinges on the terms and validity of the grievance agreement, not the CBA. Premier Security argues that the Court must "interpret" Article IV of the CBA, which sets $11.60 an hour as the minimum rate of payment for employees, in deciding this claim. According to Hoskins's Complaint, however, the specific settlement agreement is the source of the contract breach; the CBA is not. Referring to the CBA in a cursory way may factor into the analysis, but the Court would not have to actually "interpret" it.

In Count III, Hoskins alleges breach of contract for underpayment of wages because Premier Security failed to pay him at least $11.60 an hour, as required by Article IV of the CBA. Hoskins alleges that the CBA set the "wage rate" of employees at $11.60 and Premier Security failed to pay him at that rate. Unlike the other counts, this claim alleges breach of the collective bargaining agreement itself. Preemption under § 301 covers claims that require analysis of the CBA but also those that are "*founded directly on rights created by [the] collective-bargaining agreement*." *In re Bentz Metal Prod. Co., Inc.*, 253 F.3d 283, 286 (7th Cir. 2001) (emphasis added); *see, e.g., Robinson v. U.S. Steel Corp.*, No. 2:10 CV 63, 2010 WL 3862532, at *4 (N.D. Ind. Sept. 27, 2010) (a "direct challenge" to the CBA is preempted); *Harrison v. Superior Carpet Installers, Inc.*, No. 01-0206, 2002 WL 243657, at *5 (S.D. Ind. Jan. 4, 2002) ("The court therefore concludes that Section 301 of the LMRA preempts [plaintiff's] claim for wages arising from an alleged breach of the applicable collective bargaining agreement."); *cf. Pauley v. Ford Elec. and Refrigeration Corp.*, 941 F. Supp. 794, 803 (S.D. Ind. 1996)

| STATEMENT |
|---|

(no preemption because plaintiff did not assert a breach of the CBA, or try to enforce a right created under the CBA). Because § 301 preempts state law claims that involve an alleged breach of the CBA, the Court dismisses Count III.

## II. *Res Judicata* and Collateral Estoppel

On March 12, 2010, Hoskins filed an unfair labor practice charge with the NLRB alleging that Premier Security wrongfully terminated him. The NLRB Regional Director refused to issue a complaint and dismissed the charge on April 30, 2010. Premier Security maintains that the doctrines of *res judicata* and collateral estoppel prevent Hoskins from relitigating his claims here.

"When an administrative agency is acting in a judicial capacity and resolved disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate," *res judicata* and collateral estoppel apply. *U.S. v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966); *Lightsey v. Harding, Dahm & Co., Inc.*, 623 F.2d 1219, 1221 (7th Cir. 1980) (agency decision has preclusive effect where there were disputed issues, the agency acted in a judicial capacity, and the parties had an opportunity to litigate the issues before the agency). But where the NLRB decides not to bring an action against the union, "[t]his is not an adjudication by the Board; indeed, it [is] nothing more than an exercise by the General Counsel of his prosecutorial discretion, and as such is entitled neither to be given collateral estoppel effect nor to be treated as an exercise of the Board's primary jurisdiction." *Miller Brewing Co. v. Brewery Workers Local Union No. 9, AFL-CIO*, 739 F.2d 1159, 1166 (7th Cir. 1984) (superseded by statute on other grounds); *see, e.g., Slaughter v. Fred Weber, Inc.*, 570 F. Supp. 2d 1054, 1061 (S.D. Ill. 2008) (no collateral estoppel when NLRB decides there is insufficient evidence to issue an unfair labor practices complaint). Here, no preclusive effect attaches to the decision by the NLRB Regional Director to dismiss Hoskins's charge. After all, it was not an adjudication, the parties did not have a chance to argue disputed facts, and the NLRB's decision was not judicially reviewable. *See Augusta Bakery Corp. v. N.L.R.B.*, 846 F.2d 445, 447 (7th Cir. 1988). The Court thus denies Premier Security's Motion to Dismiss based on these theories.

For these reasons, the Court grants in part and denies in part Premier Security's Motion to Dismiss. Counts I, II, and IV remain but the Court dismisses Count III.