IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| DANIEL H. HOSKINS, | ) | |
| Plaintiff, | ) | |
| v. | ) | 10 C 3018 |
| | ) | |
| | ) | Judge Virginia M. Kendall |
| PREMIER SECURITY CORP., | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Daniel H. Hoskins brings this *pro se* suit against his former employer, Premier Security Corporation, alleging race discrimination, retaliation, and harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981 (Count I), breach of contract for unlawful termination (Count II), breach of contract for the underpayment of wages (Count III), and breach of contract for failure to make reinstatement payments pursuant to a 2008 settlement agreement (Count IV). On July 21, 2011, this Court dismissed Count III of Hoskins's Amended Complaint alleging breach of contract for the underpayment of wages for the reasons set forth in the Court's Order. *See Hoskins v. Premier Security*, No. 10 C 3018, 2011 WL 2940989 (N.D. Ill. July 21, 2011). Of the remaining claims, Premier argues that Hoskins's discrimination claims contained in Count I fail as a matter of law because he cannot carry his burden of establishing a case of discrimination, retaliation or harassment in violation of Title VII or 42 U.S.C. § 1981 using either the direct method of proof or the indirect burden-shifting method of proof used to establish such claims. Premier further argues that Hoskins's breach of contract claim in Count II for unlawful termination fails as a matter of law because the Employee Handbook and Discipline Policy in the

Human Resources Manual upon which Hoskins relies do not create a binding and enforceable contract. Finally, Premier argues that Hoskins's breach of contract claim for failure to make reinstatement payments contained in Count IV fails as a matter of law because there is no evidence in the record to support his claim that repayment of back wages was ever a term of the 2008 settlement agreement. Both parties moved for summary judgment, each arguing that it is entitled to judgment as a matter of law. For the reasons set forth herein, Daniel H. Hoskins's Motion for Summary Judgment is denied. Hoskins cannot establish his discrimination claims under either the direct method of proof or the indirect burden-shifting method of proof, and because his breach of contract claims fail as a matter of law, Premier Security Corporation in entitled to judgment as a matter of law in its favor and thus its Motion for Summary Judgment is granted.

## I. The Undisputed Material Facts

As an initial matter, Hoskins has not offered any admissible evidence to support his Motion for Summary Judgment. The factual allegations offered by a party in support of a motion for summary judgment must be supported by admissible evidence or at least "represent admissible evidence." *See* Fed. R. Civ. P. 56(c)(2); *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 (7th Cir. 2008) ("The evidence supporting a factual assertion must represent admissible evidence."); *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 533 (7th Cir. 2003) (evidence relied on by a party on a motion for summary judgment must be evidence of a type admissible at trial).

The Northern District of Illinois' Local Rule 56.1 prescribes the manner in which a party moving for summary judgment submits a statement of material undisputed facts in support of its motion pursuant to Federal Rule of Civil Procedure 56, as well as the manner for the nonmoving

party to respond to those facts and offer its own statement of additional facts that requires the denial of summary judgment. *See* L.R. 56.1(a)(3), (b)(3), (b)(3)(C). For a case that comes before the Court on cross-motions for summary judgment each party submits a statement of undisputed material facts that it contends requires the Court grant summary judgment in its favor, the opportunity to respond to the statement of undisputed material facts of the opposing party, as well as the opportunity to offer additional facts that require the denial of summary judgment. In this case, neither party submitted a statement of additional facts that requires the denial of summary judgment pursuant to Local Rule 56.1(b)(3)(C).

District courts have broad discretion to enforce strict compliance with Local Rule 56.1—indeed they are encouraged to do so. *See Judson Atkinson Candies, Inc.*, 529 F.3d at 382 n.2; *F.T.C. v. Bay Area Business Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005) (collecting cases); *Koszola v. Bd. of Educ. of the City of Chicago*, 385 F.3d 1104, 1109 (7th Cir. 2004); *Curran v. Kwon*, 153 F.3d 481, 486 (7th Cir. 1998) (citing *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) (collecting cases)). Even though Hoskins is *pro se* and his filings are subject to more liberal review and interpretation by the Court, he still must comply with the governing local rules of procedure. *See Dale v. Poston* 548 F.3d 563, 568 (7th Cir. 2008) ("Even in *pro se* pleadings, "procedural rules cannot be ignored.") (internal citations omitted); *Greer v. Bd. of Educ.*, 267 F.3d 723, 727 (7th Cir. 2001) (a *pro se* plaintiff's failure to comply with Local Rule 56.1 is not excused by the rule that courts should construe the pleadings of *pro se* plaintiffs liberally). This Court appointed counsel to assist Mr. Hopkins in February 2011, but he moved in November 2011 to have the appointment withdrawn and requested he be permitted to continue *pro se*. Following termination

of Hoskins' appointed counsel, the Court informed him about the *pro se* help desk and his obligation to comply with the Court's rules, including Rule 56.

Local Rule 56.1 imposes an "exacting obligation. . . on a party contesting summary judgment." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921-922 (7th Cir. 1994). When a party offers a legal conclusion or a statement of fact without offering proper evidentiary support, the Court is not to consider the matter asserted. *See Id.* at 923 (the purpose of Rule 56.1 is "to alert the court to precisely what factual questions are in dispute and point the court to the specific evidence in the record that supports a party's position on each of these questions"); *see, e.g., Alvarado v. Corporate Cleaning Service, Inc.*, 719 F. Supp. 2d 935, 937 n.1 (N.D. Ill. 2010) (the court is not to consider a statement of fact when the party offering the statement has not provided proper evidentiary support for it); *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000) (same).

Rule 901(a) of the Federal Rules of Evidence states: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." F.R.E. 901(a). Evidence offered by a party that has not been properly authenticated or identified is not to be admitted into evidence. *See Article II Gun Shop, Inc. v. Gonzales*, 441 F.3d 492, 496 (7th Cir. 2006) (quoting *Scott v. Edinburg*, 346 F.3d 752, 760 n.7 (7th Cir. 2003) ("To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence."); *Smith v. City of Chicago*, 242 F.3d 737, 741 (in deciding a motion for summary judgment, the supporting documents or exhibits offered by a party in support of its motion must be properly authenticated and admissible).

Here, Hoskins has not included any affidavits or deposition transcripts—including his own—with his Local Rule 56.1 Statement of Undisputed Material Facts. Instead, he simply attached a series of documents to his Statement of Undisputed Material Facts without establishing any of the necessary evidentiary foundation for their admissibility.[1] Without the necessary evidentiary support, the documents are inadmissible hearsay. *See Bodor v. Town of Lowell*, 248 Fed.Appx 752, 753 (7th Cir. 2007) (citing Fed. R. Evid. 901) (blank administrative inspection warrant that is not accompanied by a supporting affidavit to verify its authenticity is therefore inadmissible on a motion for summary judgment); *Scott*, 346 F.3d at 759 (expert report introduced into the record without any supporting affidavit verifying its authenticity renders the report inadmissible hearsay and precluded from consideration by the court on summary judgment); *Martz v. Union Labor Life Ins. Co.*, 757 F.2d 135, 138 (7th Cir. 1985) (correspondence filed with the district court was not supported by affidavit or otherwise authenticated, and thus in the form it was presented it constituted impermissible hearsay). "And hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial, except that affidavits and depositions, which (especially affidavits) are not generally admissible at trial, are admissible in summary judgment proceedings to establish the truth of what is attested or deposed." *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) (internal citations omitted).

---

[1]For example, as Exhibit 1, Hoskins attaches a "Personnel Schedule," which he alleges is a schedule of security officers at the Hearn Building for certain dates in 2010. As Exhibit 2 Hoskins attaches what appears to be a Letter form Union Health Services regarding his medical leave documentation. As Exhibit 21 he attaches what appears to be a character letter from an attorney, Karen Conti, who worked at the Hearn Building. Without the necessary authentication of these documents the Court cannot conclude that any is what it purports to be.

Hoskins has not demonstrated that any of the documents attached as exhibits to his Motion for Summary Judgment are what he claims they are. It is also unlikely that Hoskins will ever be able to meet this evidentiary threshold for the majority of the exhibits that he offered in support of his Motion because he testified at his deposition that he does not recall anything that occurred during his employment with Premier or the subsequent termination of his employment. As a result, all of Hoskin's Statement of Undisputed Material Facts must be disregarded by the Court because they are founded in inadmissible evidence in violation of Federal Rule of Civil Procedure 56 and Local Rule 56.1. *See Scott*, 349 F.3d at 759; *Haywood*, 323 F.3d at 533. They are therefore stricken. *See Bordelon v. Chicago Sch. Reform Bd. of Tr.*, 233 F.3d 524, 529 (7th Cir. 2000) (district court is entitled to enforce strict compliance with Rule 56.1, and may strike a party's entire statement of facts as a penalty for failing to comply with the Rule).

Hoskins's response to Premier's Statement of Undisputed Material Facts is equally problematic. In responding to the moving party's statement of fact, the nonmoving party must point to "specific references to the affidavits, parts of the record, and other supporting material." *See* L.R. 56.1(b)(3)(B). An adequate denial of a statement of fact must specifically admit or deny the relevant fact, cite to facts in support of the denial, and cite to specific references in an affidavit or other parts of the record that supports such a denial. *See Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). The Local Rules make special provision for notice to *pro se* litigants opposing summary judgment by requiring the moving party to issue a letter with their motion describing the proper manner for responding in opposition to the motion. *See* L.R. 56.2. Premier sent a Rule 56.2 letter to Hoskins with its Motion. When a *pro se* litigant is provided with a Rule 56.2 letter, then he is presumed to be on notice of his obligations under Rule 56.1, and failure to

comply with that Rule results in the admission of the moving party's facts. *See Gleash v. Yuswak*, 308 F.3d 758, 761 (7th Cir. 2002).

Premier Security Corporation is an Illinois corporation that provides customized security services to commercial, residential and retail properties in and around downtown Chicago. (Pl. 56.1 Resp. ¶ 1).[2] Daniel H. Hoskins is a former security officer of Premier. (*Id*. ¶ 2). Premier's security officer employees such as Hoskins are union members and their employment is governed by a collective bargaining agreement which calls for termination for just cause in conjunction with Premier's progressive discipline policy. (*Id*. ¶ 5). The relevant sections of Premier's Human Resources Manual, as referred to in the Employee Handbook, expressly states that Premier reserves the right to change its policies and that the "progressive Discipline and Discharge Policy is not a contract for employment or a guarantee of employment for any specific duration." (*Id*.). At all times relevant to this suit Premier had in place a comprehensive discipline policy for its employees that called for progressive discipline over four steps starting with a verbal reprimand; followed by a written warning; followed by a final written warning; and eventually discharge from employment. (*Id*. ¶ 6). The progressive discipline policy also included the possibility of suspension so that Premier could conduct an investigation that might lead to dismissal from employment. (*Id*.). Premier expressly reserved the right to accelerate the progressive discipline policy as conditions merit. (*Id*.).

---

[2]Each party submitted its Statement of Undisputed Material Facts pursuant to Local Rule 56.1. Because all of Hoskins's statements of fact are based on inadmissible evidence they are stricken, and as such they will not be referenced here. Hoskins's Local Rule 56.1(b)(3) response to Premier Security Corporation's Local Rule 56.1(a)(3) Statement of Undisputed Material Facts is abbreviated here as "Pl. 56.1 Resp. ¶ _."

Hoskins was hired by Premier as a security guard on December 1, 2007. (*Id*. ¶ 7). He was posted as a guard at a building at 515 N. State Street. (*Id*.). Hoskins's supervisor at 515 N. State Street was John Schmid, who in turn reported to Timothy Madigan. (*Id*. ¶ 8). Hoskins does not recall experiencing any acts of racism while being posted at 515 N. State Street as an employee of Premier. (*Id*. ¶ 9).[3] After learning that Hoskins hugged a tenant or visitor of 515 N. State Street

---

[3]Premier supports this statement of fact with the Continuation of Deposition of Daniel Hoskins taken March 25, 2012 ("Hoskins Dep. II"), which it submits as its Exhibit E to its Motion for Summary Judgment. Hoskins objects to the use of the Deposition based upon the fact that at the end of the Deposition he reserved signature. He further argues that he was not provided the opportunity to review the Deposition transcript or to submit an errata sheet for any errors prior to Premier submitting the Deposition as its Exhibit E. Hoskins seems to argue that by reserving signature he wanted to review the accuracy of the transcript of the Deposition, and that the Court should not now be able to rely on the transcript in deciding the instant Motion. Hoskins has not identified any errors in the transcript, nor has he drawn the Court's attention to anything that may be questionable about it. The Court therefore has no cause to doubt the veracity of the Deposition transcript. Hoskin's testimony was sworn and given under oath. Furthermore, the Deposition was recorded by Janice M. Kocek, CSR, CLR, and Notary Public, pursuant to the Federal Rules of Civil Procedure for the United States District Court for the Northern District of Illinois. The Court is therefore satisfied with Premier's Exhibit E, the Continuation of Deposition of Daniel Hoskins taken March 25, 2012, and will rely on it in adjudicating the instant Motion. *See, e.g., Stevenson v. Dart*, No. 09 C 2698, 2012 WL 987275, *2 n.2 (N.D. Ill. March 22, 2012) (admitting deposition testimony notwithstanding the fact that the deponent reserved signature because the deponent did not specify any inaccuracies in the transcript and because the court had no cause to doubt its accuracy); *Thomas v. City of Chicago*, No. 07 C 6984, 2008 WL 4891177, *1 n.1 (N.D. Ill. June 24, 2008) (where the cited testimony is clear and unequivocal the court would not delay ruling on the motion merely because the deponent reserved signature on the underlying deposition); *Jones v. More*, No. Civ. 03-56-CJP, 2006 WL 839422, *3 n.2 (S.D. Ill. March 24, 2006) (relying on deposition transcript to decide summary judgment motion notwithstanding the fact that the plaintiff reserved signature). In any case, a party cannot create a question of fact or credibility by belatedly making contradictory statements that ameliorate or contradict prior sworn statements, at least not without adequate further support in the record. *See, e.g., Jones*, 2006 WL 839422, at *3 n.2 (citing *Darnell v. Target*, 16 F.3d 174, 176-177 (7th Cir. 1994)). All of Hoskins's disputes of fact with respect to this Deposition will be referred to throughout this Opinion as "Hoskin's objection number one," and shall refer back to this discussion of the Court's admission of the Deposition transcript into evidence.

Schmid issued discipline to Hoskins on March 10, 2008. (*Id*. ¶ 10).[4] Hoskins was verbally

counseled and disciplined by Schmid and told that "he needs to limit the time he interacts with

tenants and the public and that any physical contact with tenants/visitors, with the exception of a

handshake, will not be tolerated." (*Id*. ¶ 11).[5] Schmid prepared a Disciplinary Action form dated

March 10, 2008, which characterized the disciplinary action as a "counseling session/discussion

record" pursuant to Premier's progressive discipline policy. (*Id*. ¶ 12). Hoskins does not recall an

incident on March 10, 2008, involving him hugging a tenant or visitor to 515 N. State Street or

receiving disciplinary action related to that incident. (*Id*. ¶ 13).

On August 4, 2008, Schmid became aware of an incident between Hoskins and a film crew

that was working in the lobby of 515 N. State Street. (*Id*. ¶ 14). When the film crew began to work

Hoskins informed the crew that it could not film until he confirmed that they had permission to do

so. (*Id*. ¶ 16). Hoskins admitted that he attempted to stop the film crew from filming by placing his

hand over the camera lens and telling the film crew, "you guys think you're so slick." (*Id*.). On the

---

[4]Hoskins attempts to dispute this fact on the grounds that any disciplinary actions that occurred in 2008 are not relevant to this lawsuit as they were allegedly resolved in the grievance process in 2008. He claims that these disciplinary actions are now non-existent and therefore cannot be cited in this lawsuit. Hoskins does not support his denial with any record evidence. An adequate denial of fact requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero*, 246 F.3d at 933. The evidence submitted by Premier, its Exhibit D, the Declaration of John Schmid, adequately supports its assertion of fact.

[5]Hoskins attempts to dispute this fact on the grounds that the alleged incident is irrelevant to the present suit. He further argues that the alleged issues cited by Premier are not part of the Alleged Violation History cited by Madigan in his February 9, 2010 Decision Memorandum and therefore should not be considered by this Court. Additionally, Hoskins argues that the September 30, 2008 Disciplinary Action was resolved and removed during the grievance process and that "any reference to any other 2008 dates is a moot point." Hoskins does not support his denial with any record evidence. An adequate denial of fact requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero*, 246 F.3d at 933. The evidence submitted by Premier, its Exhibit D, the Declaration of John Schmid, adequately supports its assertion of fact.

same day Schmid received a memorandum from Hoskins setting forth his interactions with the film crew, which had been hired by a tenant of 515 N. State Street, the American Medical Association, to shoot video in the lobby of the building. (*Id*. ¶ 15). On August 5, 2008, Schmid prepared a second Disciplinary Action Form—Hoskins first written warning under Premier's progressive discipline policy—based on Hoskins's conduct with respect to how he interacted with the film crew. (*Id*. ¶ 17). Hoskins does not recall an incident with a film crew on August 4, 2009, or receiving the Disciplinary Action Form dated August 5, 2008, relating to the camera crew event. (*Id*. ¶ 18). Hoskins does not recall writing or signing the August 4, 2008 memorandum setting forth his interactions with the film crew despite admitting that it is his signature that appears at the bottom of the memorandum. (*Id*. ¶ 19).

On August 26, 2008, Hoskins was disciplined for a third time—his final warning under Premier's progressive discipline policy—when he allowed contractors to enter the building with their equipment through the lobby rather than through the loading dock as required. (*Id*. ¶ 20). Schmid drafted a Disciplinary Action Form regarding the incident on August 26, 2008, and provided it to Hoskins on the same day. (*Id*. ¶ 21). Hoskins does not recall ever receiving the August 26, 2008 Disciplinary Action Form or the incident involving allowing contractors into the building, which was recorded in the Disciplinary Action Form. (*Id*. ¶ 22).[6] On September 30, 2008, Schmid received an email correspondence from the building manager of 515 N. State Street, Omar Meyers, enclosing the complaint of a tenant regarding the actions of Hoskins, including complaints of

---

[6]Hoskins asserts his objection number one to Premier's statement of fact. In addition he attempts to dispute the statement in the same manner as that described in Note 15 above. Hoskins fails to adequately controvert Premier's statement of fact, which is supported by its Exhibit E, Hoskins Dep. II.

Hoskins talking to employees of a tenant, the Hair Growth Institute, for up to thirty minutes, asking the employees for food and money, and asking the employees out on dates. (*Id*. ¶ 23). Meyers stated in his email: "I am requesting that Dan Hoskins be removed from this account." (*Id*. ¶ 24). Thus, Hoskins was client rejected. (*Id*.). The message also stated:

> this is the fourth documented incident that we have experienced with [Hoskins] this year. . .
>
> 1. Complaints from management regarding stopping tenants in the lobby to talk.
> 2. Complaints from AMA during film shoot 8/4/08
> 3. Complaints from management for allowing contractor into the lobby and access to the 23rd floor without authorization 8/26/08
> 4. Complaint from Natural Hair Growth 9/30/08 (see below)

(*Id*.). Schmid received a memorandum from Hoskins dated September 30, 2008, setting forth Hoskins's interactions with tenants of 515 N. State Street on September 29, 2008, which included his talking to employees of the Hair Growth Company, a tenant of the building, including two new employees of that company. (*Id*. ¶ 25). Schmid prepared both a Disciplinary Action Form and, given Hoskins's disciplinary history, a Discharge Request Form because Hoskins was at the final step of Premier's progressive discipline policy. (*Id*. ¶ 26). Schmid presented the forms to Hoskins on September 30, 2008 and suspended him indefinitely pending an investigation and a meeting with Madigan. (*Id*. ¶ 27). Hoskins does not recall the September 29, 2008 incident involving lengthy conversations with tenant's employees and asking them for food, money and out on dates; being suspended pending an investigation of the September 29, 2008 incident; or being client rejected from 515 N. State Street. (*Id*. ¶ 28). Hoskins does not recall the September 30, 2008 memorandum, and when asked "Do you recognize the writing that appears on [the memorandum]" responded "I don't recall." (*Id*. ¶ 29). Hoskins does not recall any tenant from any building he worked at called the Hair Growth Company, the Hair Growth Institute, or some variation of that name, nor does he recall

ever having met two new employees of that company. (*Id.* ¶ 30). Despite receiving four Disciplinary Action Forms from Schmid, Hoskins testified that he does not recall ever having worked for John Schmid. (*Id.* ¶ 31).

After reviewing Schmid's Discharge Request Form and Hoskins's prior disciplinary history, Madigan elected to terminate Hoskins's employment effective October 1, 2008, and he memorialized that decision in a memorandum to Hoskins of the same date. (*Id.* ¶ 32). Hoskins filed a union grievance related to his October 1, 2008 termination, and via his union representative at the grievance hearing argued that he should not have received any discipline on August 26, 2008 for allowing contractors to access the building through the main lobby because he did actually require the contractors to wait outside the building until the tenant came in to escort the contractors into the building. (*Id.* ¶ 33). Via the grievance process and through his union representatives, Hoskins demanded reinstatement, full back pay, seniority and benefits, while Premier's position during the grievance process was that Hoskins's termination was justified and in accordance with Premier's progressive discipline policy. (*Id.* ¶ 34). Given Hoskins's arguments regarding the August 26, 2008 discipline, Madigan vacated the August 26, 2008 final written warning and the September 30, 2008 incident became Hoskins's final written warning. (*Id.* ¶ 35). As a compromise Hoskins and Premier verbally agreed between Madigan and Hoskins's union representative that Hoskins would withdraw his grievance at this first step of the process and waive arbitration under the union agreement, and that he would be reinstated into his position with Premier without any back pay. (*Id.* ¶ 36).[7]

_____

[7]Hoskins attempts to dispute this statement of fact. He argues that it makes no sense that he would agree to withdraw his grievance, to waive arbitration, and to forgo any back pay. He also asserts that Premier's statement of fact is not supported by any supportive fact. He asserts that it is inconceivable that a trier of fact would accept Madigan's statement as being credible that Hoskins's union representative would agree to his reinstatement without any financial compensation for lost

12

Hoskins does not recall ever filing a union grievance related to him being allegedly terminated under Premier's progressive discipline policy; being a member of a union while employed by Premier; any agreement to be reinstated to work at Premier; or any agreement to be paid any back pay upon his reinstatement. (*Id.* ¶ 37).

Because Hoskins had been client rejected at the 515 N. State Street building he could not be returned to work there, so in late 2008 Hoskins was transferred to a building at 100 N. LaSalle Street, also known as the Hearn Building. (*Id.* ¶ 38). Hoskins moved into a vacant position at the Hearn Building at the same wage rate he was paid while posted at 515 N. State Street. (*Id.*). While posted at the Hearn Building Hoskins's immediate supervisor was Site Director Lawrence Summers, who reported directly to Madigan. (*Id.* ¶ 39). On January 21, 2010, Madigan and Summers conducted a department meeting with all of Premier's security officers who were assigned to the Hearn Building. (*Id.* ¶ 40). The purpose of the meeting was to advise the officers that there had been complaints by some of the building's tenants that Premier's security officers had engaged in inappropriate and unprofessional behavior and to remind the security officers that they had to maintain proper decorum and a professional demeanor whenever they were on duty. (*Id.* ¶ 41). At the January 21, 2010 meeting Hoskins did not complain to either Madigan or Summers about a

---

wages and benefits for an incident that he alleges was proven by the evidence that he was not at fault for. Hoskins asserts that Madigan subsequently vacated that disciplinary action because Hoskins had in fact followed proper procedure. He argues that Madigan's Declaration contradicts Premier's Decision Memorandum. He finally argues that with the August 26, 2008 incident being vacated, the alleged September 30, 2008 incident could no longer remain as a removal, and that he emphatically refuted the allegations concerning the September 30, 2008 incident. Hoskins does not support his denial with any record evidence. An adequate denial of fact requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero*, 246 F.3d at 933. Furthermore, the evidence cited by Premier, its Exhibit A, the Declaration of Timothy Madigan, adequately substantiates Premier's assertion of fact.

picture of Tiger Woods hanging in the break room of the Hearn Building. (*Id.* ¶ 42). Hoskins has no recollection of being present at the January 21, 2010 department meeting or of complaining to Madigan or Summers about a picture hanging in the break room of the Hearn Building. (*Id.* ¶ 43).

On February 1, 2010, Madigan received an email from Deborah Anderlink, the building manager of the Hearn Building, regarding complaints from tenants of the Building about Hoskins. (*Id.* ¶ 44). Anderlink's email stated that the management company had "received two more tenant complaints about [Hoskins] today and one management complaint from Friday. Please find Dan a new home. This is not working out." (*Id.* ¶ 45). Anderlink described the tenant complaints as:

> Dan asking for food/bev/magazines/whatever generally (moocher) or talks to [sic] much. Today another moocher food/bev one but the icing on the cake was he asked for money. . .more than $50 less than $500 and the tenant didn't think he was joking. [Hoskins's] professionalism is non-existent. This on top of everything else, I can't defend his stupidity any longer.

(*Id.* ¶ 46). Madigan then informed Summers of the complaint and directed Summers to remove Hoskins from the schedule pending a meeting with Madigan at Premier's corporate offices on February 9, 2010. (*Id.* ¶ 47). Summers prepared a Disciplinary Action Form dated February 5, 2010, noting that Hoskins was being suspended pending an investigation because Hoskins "was reported to have made inappropriate comments to building tenants. Such comments included requesting monetary funds. This is a violation of HR policy 5.07." (*Id.* ¶ 48).[8]

---

[8]Hoskins attempts to dispute this fact on the grounds that there was no investigation conducted. He also claims that there is no factual evidence to support any alleged violation ever occurred. He also argues that this fact is based on hearsay. Hoskins does not support his denial with any record evidence. An adequate denial of fact requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero*, 246 F.3d at 933. Furthermore, the evidence cited by Premier, its Exhibit N, the Declaration of Lawrence Summers, and its Exhibit P, the February 5, 2010 Disciplinary Action Form, adequately substantiates this assertion.

On February 5, 2010, Summers met with Hoskins to give him the Disciplinary Action form and to personally advise him that he was suspended based on tenant complaints. (*Id.* ¶ 49). Hoskins replied, "This is bullshit," which he repeated several times during the meeting. (*Id.*). Summers then informed Hoskins that he was scheduled to meet with Madigan on February 9, 2010. (*Id.*). Hoskins does not recall working with Madigan; working with Summers; being posted at the Hearn Building; ever discussing client complaints while he was posted at the Hearn Building; or (5) working for Premier on February 1, 2010. (*Id.* ¶ 50). In anticipation of his February 9, 2010 meeting with Hoskins, Madigan reviewed Hoskins's disciplinary history and noted that Hoskins was still on a Final Written Warning from his previous posting and had now been client rejected two times. (*Id.* ¶ 51).[9] Madigan decided that Premier needed to discharge Hoskins and he therefore prepared a Decision Memorandum that detailed Hoskins's employment history and the more recent complaint that Premier received about Hoskins as the basis for the decision to terminate Hoskins's employment with Premier. (*Id.*).

Hoskins and Madigan met on February 9, 2010, and at that meeting Madigan informed Hoskins that Premier was terminating his employment because of his violation of Human Resources Manual Policy No. 5.07. (*Id.* ¶ 52). Hoskins admits that he was terminated based on complaints in the form of "hearsay from tenants from the Hearn Building" but is unable to recall who terminated him, why he alleged he was suspended and terminated for the same offense, or the year in which he

---

[9]Hoskins attempts to dispute this fact on the grounds that there is no evidence in the record to support the assertion that Hoskins was given any Final Warning. Hoskins does not support his denial with any record evidence. An adequate denial of fact requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero*, 246 F.3d at 933. Furthermore, the evidence cited by Premier, its Exhibit A, the Declaration of Timothy Madigan, and its Exhibit Q, the February 9, 2010 Decision Memorandum, adequately substantiates Premier's assertion of fact.

was terminated. (*Id.* ¶ 53). Hoskins is also unable to recall whether Premier had a human resources policies in effect while he was an employee; ever being suspended pending an investigation while working for Premier; Premier's progressive discipline policy; or that Premier violated the progressive discipline policy. (*Id.* ¶ 54). Hoskins does not recall what he did to assert his rights that resulted in his termination as set forth in his amended Complaint. (*Id.* ¶ 55). Hoskins does not recall anyone making racist remarks while he was posted at the Hearn Building, nor does he recall whether Madigan or Summers were racist. (*Id.* ¶ 56). Hoskins does not recall answering the interrogatories he served on Premier in response to Premier's questions. (*Id.* ¶ 57).[10] Hoskins does not recall whether Premier owes him any money; whether he was terminated because of his race; whether he was subjected to harassment while working for Premier; whether he was terminated for complaining about a picture of Tiger Woods; whether he was the recipient of tenant complaints; or whether he was client rejected. (*Id.* ¶ 58).

## II. The Standard of Review

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986); *Omnicare Inc. v. UnitedHealth Group, Inc.*, 629 F.3d 697, 704 (7th Cir. 2011); *Bennington v. Caterpillar Inc*., 275 F.3d 654, 658

---

[10]Hoskins asserts his objection number one to Premier's statement. The evidence cited by Premier, its Exhibit E, Hoskins Dep. II, adequately supports this fact.

(7th Cir. 2001). When a case comes before the Court on cross-motions for summary judgment, the Court must look to the burden of proof that each party would bear on an issue at trial and then require that party to go beyond the pleadings and establish through competent evidence a genuine issue of material fact. *See Santella v. Metropolitan Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex*, 477 U.S. at 324).

### III. Discussion

#### A. The Title VII and Section 1981 Claims

Hoskins argues that Premier discriminated against him, retaliated against him, and harassed him on the basis of his race in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. The method of analyzing race discrimination claims under Title VII is the same as for claims of race discrimination brought under 42 U.S.C. § 1981. *See McGowan v. Deere & Company*, 581 F.3d 575, 579 (7th Cir. 2009). To establish a case of discrimination under Title VII or § 1981 the plaintiff may use either the direct method of proof or the indirect burden-shifting method of proof. *See Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008) (citing *Brown v. Illinois Dep't Natural Res.*, 499 F.3d 675, 681 (7th Cir. 2007)); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803 (1973). Under the direct method of proof, a plaintiff may show, through direct evidence or a convincing mosaic of circumstantial evidence, that his employer took an adverse employment action against him because of his race. *See Rhodes v. Illinois Dept. of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004); *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1061 (7th Cir. 2003). Direct evidence of race discrimination in violation of Title VII or § 1981 most frequently takes the form of an admission by the relevant decisionmaker that the plaintiff was discriminated against because of his race. *See Rhodes*, 359 F.3d at 504. To prove race discrimination using a convincing mosaic of circumstantial

evidence the plaintiff must show that the evidence relates directly to discriminatory conduct or a discriminatory reason for the defendant's act.  *See Id.* (citing *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003)).

Under the facts of this case, Hoskins has not come forward with sufficient evidence to establish a case of discrimination under the direct approach.  Hoskins points to no discriminatory conduct by his supervisors or his co-workers.  Hoskins testified that he could not recall whether he was terminated because of his race.  He also testified that he did not recall any racist activity while posted at 515 N. State Street or at the Hearn Building, and that he did not know if Madigan or Summers were racist.  When asked about allegations relating to complaints about an alledgely racist poster, Hoskins testified that he did not recall complaining about the poster.  It is evident that Hoskins cannot demonstrate discrimination using the direct method of proof because he has no direct evidence, nor does he have a convincing mosaic of circumstantial evidence, to establish that Premier discriminated against him because of his race.

To establish a case of discrimination under the indirect burden-shifting method of proof the plaintiff must first establish a *prima facie* case of discrimination by proving that (1) he was a member of a protected class; (2) he was meeting his employer's legitimate job expectations; (3) he suffered an adverse employment action; and (4) other similarly situated employees who were not members of the protected class were treated more favorably.  *See Atanus*, 520 F.3d at 672 (citing *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 978 (7th Cir. 2004)); *see also McDonnell Douglas Corp.*, 411 U.S. at 803.  Summary judgment is proper if the employee fails to establish any of the elements of a *prima facie* case of discrimination.  *See Kampmier v. Emeritus Corp.*, 472 F.3d 930, 939 (7th Cir. 2007).  If the plaintiff can establish a *prima facie* case of discrimination, the burden then shifts to the

employer to proffer a legitimate, noninvidious reason for taking the adverse employment action against the plaintiff. *See Antus*, 520 F.3d at 672. If the employer has a legitimate, noninvidious justification for its action, the burden then shifts back to the plaintiff to show that the employer's legitimate, nonindivious reason for its action is really a mere pretext for racial discrimination. *See Id.*

Hoskins can not establish a *prime facie* case of discrimination because the evidence shows that he was not meeting his employer's legitimate job expectations, nor is there any evidence in the record to establish that a similarly situated employee outside of the protected class to which Hoskins belongs was treated more favorably than he was. For a plaintiff to demonstrate that he was meeting his employer's legitimate job expectations he must present some evidence that his performance was satisfactory, and that evidence must consist of more than the plaintiff's own assessment of his performance. *See Milbrook v. IBP, Inc.*, 280 F.3d 1169, 1181 (7th Cir. 2002) (citing *Sample v. Aldi, Inc.*, 61 F.3d 544, 549 (7th Cir. 1995)). A plaintiff's perception of himself is not relevant; what is relevant is the decisionmaker's perception of the employee's performance. *See Milbrook*, 280 F.3d at 1181 (citing *Olsen v. Marshall & Ilsley Corp.*, 267 F.3d 597, 602 (7th Cir. 2001)). To demonstrate that an employee was treated unfavorably as compared to another similarly situated employee not within the protected class to which the plaintiff belongs, the plaintiff must prove that an employee who dealt with the same supervisor and who was subject to the same working conditions was treated more favorably than the plaintiff. *See Gates v. Caterpillar*, 513 F.3d 680, 690 (7th Cir. 2008) (citing *Snipes v. Illinois Dept. of Corr.*, 291 F.3d 460, 463 (7th Cir. 2002)).

Hoskins cannot prove either that he was meeting Premier's legitimate expectations of him or that other similarly situated employees not within the protected class were treated more favorably

than he was.  Hoskins testified that he cannot remember anything connected with his employment at Premier, including where he worked, who any of his co-workers or supervisors were, and whether he received any disciplinary action while employed by Premier.  His utter lack of memory means that he cannot testify about what Premier expected of him or how he performed.  The undisputed evidence in this case overwhelming supports the conclusion that Hoskins was not meeting Premier's legitimate job expectations.  There is uncontested testimony from three separate supervisors of Hoskins related to repeated deficiencies in his job performance, as well as evidence of complaints they received from tenants and managers of the buildings at which Hoskins was posted.  The evidence shows that Hoskins was terminated by Premier after failing its progressive discipline policy, which included Hoskins receiving an oral warning, a written warning, and a final written warning.  In addition, the evidence shows that Hoskins was client rejected by two separate clients of Premier.  Finally, Hoskins cannot even identify his co-workers, so he cannot possibly maintain that a similarly situated employee outside of the protected class was treated more favorably that he was.

Even if Hoskins could establish a *prima facie* case of discrimination—which he cannot—the evidence shows that Premier had a legitimate, noninvidious reason for terminating Hoskins's employment.  Hoskins was unprofessional, did not follow company policy, and solicited tenant's of the buildings at which he was posted for food, drinks, money and dates.  Furthermore, he was twice client rejected and progressed all the way through Premier's progressive discipline policy.  Hoskins cannot prove that the legitimate, noninvidious business reason proffered by Premier for his termination is a mere pretext for discrimination.  A pretext for discrimination means something that is a lie or a phony reason for the employer's act.  *See Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 642 (7th Cir. 2008) (citing *Hague v. Thompson Distribution Co.*, 436 F.3d 816, 823 (7th Cir. 2006)).

Establishing pretext is a higher standard than proving an unusual act or a business error. *See Hudson v. Chi. Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004). Pretext is more than a mistaken employment decision. *See Id*. The pretext inquiry is into whether the employer's justification for its action is honest, not whether it was wise or well considered. *See Faas*, 532 F.3d at 642. Pretext is affirmative deceit used to cover-up discriminatory conduct. *See Id*. There is noting in the record that establishes that Premier's reason for terminating Hoskins was not the true reason for doing so. Therefore, Hoskins cannot establish discrimination under the indirect method of proof either. For these reasons, summary judgment is granted in Premier's favor on Hoskins's Title VII and § 1981 discrimination claims contained in Count I of his amended Complaint.

Hoskins Title VII retaliation claim is likewise doomed. A plaintiff can establish a claim of Title VII retaliation using either the direct method of proof or the indirect burden-shifting method of proof. *See Coleman v. Donahoe*, 667 F.3d 835, 859 (7th Cir. 2012) (citing *Weber v. Universities Research Ass'n*, 621 F.3d 589, 592 (7th Cir. 2010)); *see also McDonnell Douglas Corp.*, 411 U.S. at 803. Under the direct method of proof the plaintiff must establish (1) participation in an activity statutorily protected under Title VII; (2) an adverse employment action; and (3) a causal connection between the two. *See Coleman*, 667 F.3d at 859 (citing *Leitgen v. Franciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 673 (7th Cir. 2011)). Under the indirect method of proof a plaintiff must show that (1) he engaged in statutorily protected activity; (2) he met his employer's legitimate job expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than a similarly situated employee who did not engage in the statutorily protected activity. *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006); *see also McDonnell Douglas Corp.*, 411 U.S. at 803. If the plaintiff can do this, the burden then shifts to the employer to proffer

a legitimate, noninvidous reason for the adverse employment action. *See Tomanovich*, 457 F.3d at 663. If the employer can demonstrate a legitimate, noninvidious reason for its adverse employment action, the burden then shifts back to the plaintiff to show that the employer's justification is actually a mere pretext for retaliation for engaging in statutorily protected activity. *See Id*.

Hoskins cannot establish his Title VII retaliation claim for the same reason he cannot establish his Title VII discrimination claim. Under the direct method he has no evidence, either direct or circumstantial, that he ever engaged in any protected activity or even suffered any adverse employment action. Hoskins testified that he did not recall making any complaints or receiving any disciplinary action, including the details of his termination by Premier. Under the indirect method Hoskins cannot establish that he was meeting Premier's legitimate job expectations or that a similarly situated employee was treated more favorably. There is no evidence in the record upon which Hoskins can carry his burden of proof under either the direct or indirect method for establishing a Title VII retaliation claim.

Hoskins can also not establish his harassment claim. Under Title VII an employer is prohibited from creating a hostile work environment. *See Mason v. Southern Illinois University at Carbondale*, 233 F.3d 1036, 1043 (7th Cir. 2000). To state a valid hostile work environment claim a plaintiff must demonstrate that (1) he was subject to unwelcome harassment; (2) the harassment was based on race; (3) the harassment was sufficiently severe or pervasive so as to alter the conditions of the plaintiff's employment and create a hostile or abusive atmosphere; and (4) there is a basis for holding the employer liable. *See Id.* (citing *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998)). In this case there is no evidence that Hoskins was subjected to racially motivated harassment while employed by Premier. There is no evidence in the record, not even

Hoskins's own testimony, to establish that any harassment took place, let alone rose to the level of creating a hostile work environment. Hoskins testified that he did not recall any racial harassment occurring while he was stationed at either 515 N. State Street or at the Hearn Building. Thus, Hoskins cannot demonstrate that he was subjected to racial harassment. For these reasons, summary judgment is granted in favor of Premier on Hoskins's claims of Title VII retaliation and harassment contained in Count I of his amended Complaint.

### B. The Breach of Contract Claims

Hoskins claims that Premier is in breach of contract by not following the progressive discipline policy summarized in the Employee Handbook and set forth in detail in the accompanying Human Resources Policy Manual. Under Illinois law three conditions must be met for an employee handbook or policy manual to give rise to a binding contract. *See Geva v. Leo Burnett Co, Inc.*, 931 F.2d 1220, 1225 (7th Cir. 1991) (citing *Duldulao v. St. Mary of Nazareth Hospital Center*, 505 N.E.2d 314 (Ill. 1987)). First, the language of the handbook or policy manual must contain a promise clear enough that a reasonable employee would perceive that an offer is being made. *See Id.* Second, the handbook or policy manual must be distributed in such a way that the employee is aware of its contents and reasonably believes it to be an offer. *See Id.* Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement contained in the handbook or manual. *See Id.*

In this case, Hoskins cannot establish that an employee would reasonably believe that Premier's Handbook or Policy Manual constituted a binding contract. The Handbook explicitly disclaims that it is not a contract of employment or a guarantee of employment or compensation. It is well established that a disclaimer that is included in an employee handbook or policy manual if

clear and forthright will operate as a complete defense to a breach of contract suit premised on an employee handbook or employment policy. *See Workman v. United Parcel Service, Inc.*, 234 F.3d 998, 1000 (7th Cir. 2000). No reasonable trier of fact could read the Handbook or Employee Manual and conclude that Premier's employment policies are contractual in nature or that they are not subject to change at any time in Premier's sole discretion. Even if Premier's Handbook or Manual could be construed as giving rise to an enforceable contract, Hoskins still cannot establish that a breach occurred because he cannot prove that Premier deviated from the terms of the policy expressed in the Handbook. The evidence is undisputed that Hoskins received every level of discipline called for by Premier's progressive discipline policy before he was terminated. Hoskins argues that Premier cannot suspend him and terminate his employment for the same reason. This argument fails to take into account that suspension is not another step in the progressive discipline process. Rather, suspension is provided to allow Premier to investigate the incident at issue and determine if termination is indeed called for. Suspending Hoskins pending an investigation and then subsequently discharging him does not run counter to Premier's progressive discipline policy. In fact, the undisputed evidence shows that suspension is expressly permitted by the policy. Thus, Hoskins cannot establish that Premier breached an employment contract with him when it terminated his employment. Accordingly, summary judgment is granted in Premier's favor on Count II of Hoskins's amended Complaint.

Hoskins also argues that Premier breached a contract with him to pay back wages as part of the settlement agreement reached between the parties in 2008. Under Illinois law, the elements of a cause of action for breach of contract are (1) offer and acceptance; (2) valid consideration; (3) definite and certain terms; (4) substantial performance by the plaintiff; (5) breach by the defendant;

and (6) damages. *See Association Benefit Services, Inc., v. Caremark RX, Inc.*, 493 F.3d 841, 849 (7th Cir. 2007) (citing *MC Baldwin Fin. Co. v. DiMaggio, Rosario & Veraja, LLC*, 845 N.E.2d 22, 30 (2006), *leave to appeal denied*, 850 N.E.2d 808 (Ill. 2006)). Hoskins cannot recover for his breach of contract action because he cannot establish that the 2008 agreement that was reached between Premier and Hoskins's union representative was ever breached.

The only evidence in the record regarding the terms of the 2008 agreement comes from Timothy Madigan, Premier's Vice President. In 2008, Madigan and Hoskins's union representative negotiated the terms of an agreement at the grievance hearing. The terms of the agreement required Hoskins and the union to withdraw the grievance at the first step of the grievance process and waive the right to take the case to arbitration pursuant to the terms of the collective bargaining agreement. In exchange, Premier agreed to remove the August 26, 2008 disciplinary action from Hoskins's disciplinary progression record, reinstate Hoskins to his position as a security officer and reassign Hoskins to a new building. The undisputed evidence in the record establishes that recovery of lost wages to Hoskins for the period of time between his termination and his reinstatement was not included as a term of the agreement.

The record reflecting the agreement that was reached and the fact that Premier fulfilled its obligations under it is undisputed. The agreement was not reduced to writing, as is often the case in the adjustment of union grievances. Hoskins testified that he cannot recall anything about how or why his employment was terminated in 2008. He likewise cannot recall ever filing a grievance or anything about the grievance process or his subsequent reinstatement in 2008. Thus, Madigan's testimony concerning the terms of the agreement and the fact that those terms did not include back pay is unopposed. As a result Hoskins cannot establish that Premier breached a contract with him

by not paying him back wages as part of the 2008 settlement agreement. Accordingly, summary judgment is granted in Premier's favor on Count IV of Hoskins's amended Complaint.

## IV. Conclusion

For the foregoing reasons, Daniel H. Hoskins's Motion for Summary Judgment is denied. Premier Security Corporations's Motion for Summary Judgment is granted.


Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: September 5, 2012